IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

VIRGINIA BERNDT,

                Plaintiff,

v.                                           OPINION and ORDER

ANDREW SAUL,                              20-cv-561-jdp
Commissioner of Social Security,

                Defendant.

---

Plaintiff Virginia Berndt seeks judicial review of a final decision of defendant Andrew Saul, Commissioner of the Social Security Administration. Administrative law judge (ALJ) Victoria A. Ferrer issued a decision partly favorable to Berndt, concluding that she was disabled as of the day she turned 50 by virtue of the Social Security regulations applicable to those "closely approaching advanced age." Berndt challenges the conclusion that she wasn't disabled before then. Berndt's core argument is that the ALJ wrongly discredited the opinion of one of her doctors that she could do only six hours of sedentary work a day, which would have precluded full-time employment. The ALJ's assessment of the doctor's opinion is well-explained and supported by substantial evidence. The court affirms the commissioner's decision. The hearing scheduled for April 15, 2021, is canceled.

BACKGROUND

The case has a long history, which does not need to be recited in detail here. Berndt applied for benefits in December 2013, alleging disability as of December 31, 2011. Her application was denied initially and on reconsideration, and she requested a hearing before an

ALJ. ALJ John Martin issued a decision in February 2017 finding Berndt not disabled. R. 14–26.[1]

Berndt appealed to this court; the parties stipulated to a remand. *See Berndt v. Berryhill*, No. 18-cv-438-jdp, Dkt. 13 (W.D. Wis. Nov. 1, 2018). In its remand order, the Appeals Council directed the ALJ to reevaluate several issues relating to Berndt's mental functional capacities. R. 1133–35.

On remand, the case was assigned to ALJ Ferrer, who held a supplemental hearing on November 6, 2019. After the hearing, Berndt submitted several hundred pages of supplemental evidence. The ALJ accepted this evidence even though it had been available for years. R. 1004. The ALJ found that Berndt suffered from the severe impairments of obesity, left-hand Dequervian's tendonitis, lumbar degenerative disc disease, depressive disorder, and unspecified anxiety disorder. R. 1007. She ascribed to Berndt the residual functional capacity (RFC) to perform sedentary work with additional physical and mental restrictions. R. 1009. Relying on the testimony of a vocational expert, the ALJ found that Berndt was unable to perform her past relevant work. The ALJ concluded that once Berndt turned 50 on March 18, 2019, she was disabled by virtue of the Medical-Vocational rules. Under the applicable rule, a person aged 50–54, limited to sedentary work, with limited education, and without transferrable work skills is deemed disabled. Medical-Vocational Rule 201.10. But the Medical-Vocational rules did not mandate a finding of disability for Berndt before she reached the age of 50. The ALJ found that Berndt could have worked as an assembler, inspector, or hand packager, jobs that were

---

[1] Record cites are to the administrative transcript, located at Dkt. 11.

sufficiently available in the national economy, and thus she was not disabled before she turned 50.

On appeal, the court's role is to determine whether the ALJ's decision is supported by substantial evidence, which means "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). This is not a high standard, requiring only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* But the ALJ must "build an accurate and logical bridge" between the evidence and her conclusions. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal quotation marks omitted).

## ANALYSIS

Although the remand order directed the ALJ to reconsider issues that related to Berndt's mental limitations, this appeal concerns Berndt's physical limitations, specifically those caused by her lumbar degenerative disc disease. Berndt alleges that her back pain was debilitating.

The ALJ's decision provides a thorough description of the extensive treatment Berndt received on her lower back over the years, including three surgeries and significant pain treatment. The ALJ found that the evidence showed that "overall, [Berndt] has seemed to have consistent lower back pain with intermittent radicular symptoms. However that same evidence fails to show claimant's alleged symptoms are as limiting as she asserts." R. 1016. The ALJ thoroughly explained her findings, including how the evidence showed successful treatment of her back problems, albeit with periods of difficulty. The ALJ also detailed Berndt's failure to follow up with physical therapy, her continued smoking contrary to her doctors' advice, and her missed medical appointments. And the ALJ pointed to the lack of confirming evidence in

the medical imaging, which showed only mild and stable degenerative changes. *Id*. Berndt does not challenge the ALJ's assessment of her subjective symptoms.

On appeal, Berndt focuses on the ALJ's assessment of the opinion of one of Berndt's physicians, Dr. Dominic Chu.

### A. The ALJ's assessment of Dr. Chu

Chu was a physiatrist who saw Berndt a few times between 2016 and 2018. Chu first saw Berndt on November 1, 2016, for Berndt's complaints of ongoing back pain. He made treatment notes for the visit. R. 864–65. He also completed a "Return to Work Note" which said that Berndt could do six hours of sedentary work a day, and that she would need to alternate between sitting, standing, and walking. R. 866. Chu also limited Berndt to only occasional walking, bending, and squatting, and he said that she should avoid sustained kneeling, seldom climb stairs, and not be exposed to unprotected heights. *Id.*

The ALJ accepted much of Chu's assessment, agreeing that Berndt was limited to sedentary work with additional restrictions. But the ALJ rejected Chu's limitation to only six hours of work and the sit/stand/walk option. R. 1020. The ALJ found that these restrictions were not supported by objective evidence. And the ALJ cited evidence from after November 1, 2016, that Berndt was more physically capable than Chu indicated on the return-to-work form.

Berndt says that the ALJ should have fully credited Chu's opinion for three reasons: (1) the opinion was supported by objective medical evidence; (2) the ALJ didn't consider a statement by Chu regarding Berndt's prior surgery; and (3) because Chu had examined and treated Berndt, Chu's opinions are entitled to deference.

1. **Supporting medical evidence**

Berndt identifies two pieces of medical evidence considered by Chu that Berndt says provide objective support for Chu's work restrictions. The first is an evaluation performed by nurse practitioner Kelly Zopfi a few weeks before Chu wrote the return-to-work note. R. 854–62. Chu had referred Berndt to Zopfi for an evaluation of her back and leg pain. The ALJ discussed Zopfi's evaluation in her opinion, stating that Zopfi found that Berndt "was not in acute distress, was able to transfer movements smoothly, and had minimal pain behaviors" and that Berndt "had intact balance and coordination as well as full strength in her lower extremities." R. 1012. Zopfi also observed that Berndt had antalgic posturing, had a limited lumbar range of motion, and reported numbness in her left leg, which the ALJ noted. *Id.* Zopfi recommended a caudal epidural steroid injection, physical therapy, and tobacco cessation for pain management. Berndt received a caudal epidural steroid injection the next month, but she didn't follow up on her referral to physical therapy, nor did she stop smoking. As the ALJ noted, another medical provider stated a few months later that Berndt "did not follow through with the recommendations for pain management." R. 1013 (quoting R. 1709).

The second piece of evidence that Berndt cites is a functional capacity evaluation performed by physical therapist Christie L. Pelzer, and cosigned by Chu, on the same day that Chu completed the return-to-work note. R. 1687–93. Pelzer's assessment was similar to Chu's, but Pelzer did not limit Berndt to six hours of work per day. The ALJ also cited Pelzer's evaluation, giving it partial weight "for the same reasons as previously discussed." R. 1020. The parties infer that the ALJ discounted Pelzer's opinion for the reasons she gave for discounting Chu's opinion: a limited treatment history with Berndt and a lack of objective support.

The ALJ considered both Zopfi's evaluation and Pelzer's evaluation, and Berndt doesn't identify any errors in the ALJ's handling of this evidence. Nor is this evidence helpful to her case. Both Zopfi and Pelzer cited Berndt's subjective complaints, but the ALJ gave good reasons to discount Berndt's subjective complaints, and Berndt doesn't challenge that aspect of the ALJ's decision. Zopfi's examination findings were mostly unremarkable. Berndt doesn't identify any specific findings from Pelzer's examination that would support Chu's opinion. Instead, Berndt argues that "[a]n FCE is entitled to weight and consideration pursuant to law." Dkt. 22, at 11. She cites *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir. 2004), for the proposition that physical therapists have "significant expertise" regarding whether a chronic physical condition would prevent a return to work. But the ALJ considered Pelzer's evaluation, and Berndt identifies nothing that calls the ALJ's handling of Pelzer's evaluation into question.

### 2. Berndt's prior surgery

Berndt also contends that a brief observation by Chu in his treatment notes supports the work restrictions. Chu wrote that he "talked [to Berndt] about the pedicle screw that was put in by the surgeon who really did not follow up enough about her restrictions." R. 865. Berndt says that this note shows that "[t]he hardware from Berndt's surgery merited a reduction in the RFC." Dkt. 22, at 14. But she doesn't explain why this note would require the specific restrictions at issue: limiting her to a six-hour workday and requiring a sit/stand/walk option. The commissioner made this point in his brief, Dkt. 25, at 13, but Berndt failed to respond in her reply brief, so the argument has been abandoned. But even if not abandoned, Berndt has failed to show how Chu's comment about the screw from a prior surgery supports Chu's specific limitations. The ALJ addressed Berndt's surgical history and acknowledged that she had ongoing problems.

### 3. Standards applicable to Chu's opinion

Berndt contends that the ALJ should have given more weight to Chu's opinion because Chu had examined and treated Berndt, and thus his opinions are entitled to deference. Regulations in effect at the time that Berndt filed her claim stated that the agency would generally give more weight to medical opinions from sources who had examined or treated a claimant than to opinions from sources who hadn't examined or treated her. 20 C.F.R. § 404.1527(c)(1), (2).

The regulations in effect at the time stated that a medical-source opinion was to be evaluated under a framework that required consideration of several factors, including the support and explanation provided for the opinion, the opinion's consistency with the medical record as a whole, the source's specialization, and any other factors that "tend to support or contradict the medical opinion." 20 C.F.R. § 404.1527(c)(3)–(6). Additional factors relevant to a treating source's opinion included the length of the treatment relationship, the frequency of examination, and the nature and extent of the treatment relationship. 20 C.F.R. § 404.1527(c)(2). The ALJ wasn't required to discuss each of these factors so long as she considered those that were important to the decision. *See Henke v. Astrue*, 498 F. App'x 636, 640 n.3 (7th Cir. 2012) (noting that although "[t]he ALJ did not explicitly weigh every factor while discussing her decision to reject [a treating physician's] reports," she discussed the reports under two of the regulatory factors, which was "enough"); *Elder v. Astrue*, 529 F.3d 408, 415–16 (7th Cir. 2008) (affirming denial of benefits where ALJ discussed only two of the regulatory factors).

The ALJ's opinion shows that she applied the regulatory factors in evaluating Chu's opinion. She said that Chu's opinion was inconsistent with Berndt's medical record, and she

7

noted that Chu's treatment relationship with Berndt was extremely limited, as he had met with her only twice. "If the ALJ discounts the physician's opinion after considering these factors, [the court] must allow that decision to stand so long as the ALJ minimally articulated [her] reasons." *Elder*, 529 F.3d at 415 (internal quotation marks omitted). The ALJ gave two sound reasons for discounting Chu's opinion, and Berndt doesn't identify any evidence that undermines either of them.

## B. Berndt's RFC

Berndt contends that the ALJ's mishandling of Chu's opinion led to an RFC that was defective. Berndt argues that because the ALJ accorded little weight to the state agency consultants and discounted Chu's opinion, the RFC was unsupported by any medical opinion.

There is no rule that an ALJ must fully endorse any of the medical sources in the record. Berndt relies on *Vogel v. Saul*, No. 4:18-CV-36-JEM, 2019 WL 4200618 (N.D. Ind. Sept. 4, 2019), in which the court held that an ALJ failed to build a logical bridge to the RFC regarding the claimant's mental abilities. The court said that it was "completely unable to determine" what medical evidence the ALJ had relied on because he had given no more than little weight to any psychological opinions and he had failed to explain the reasoning behind the RFC. *Id.* at *4. But here, the ALJ explained why she gave only partial weight to Chu's opinion, and she explained that she had based restrictions in the RFC on the portion of Chu's opinion that she found persuasive. R. 1019.

Berndt also says that the ALJ should have retained another expert to review the evidence of physical impairments after March 2015, when the last state-agency consultant reviewed Berndt's record. Berndt cites *Moreno v. Berryhill*, 882 F.3d 722, 728-29 (7th Cir. 2018), *as amended on reh'g* (Apr. 13, 2018), for the idea that the ALJ should not rely on an outdated

8

assessment if later evidence shows significant new diagnoses that could have affected the reviewing physician's opinion. There is significant evidence from after March 2015, most notably an April 15, 2015 back surgery. But Berndt points to no significant new diagnoses or events after Chu's opinion from November 2016. The ALJ thoroughly discussed the medical evidence from 2017, 2018, and 2019, R. 1013–14, which supported the ALJ's conclusion that, contrary to Chu's opinion, Berndt was not suffering from debilitating lower-back pain.

## CONCLUSION

Berndt focuses narrowly on Chu's conclusion in November 2016 that Berndt should be permanently restricted to six hours of sedentary work a day because of lower-back pain. But the ALJ took a broader view of the evidence, concluding that Chu's work restrictions were not all supported by the record. The ALJ's reasoning is well-explained, and her thorough opinion is amply supported by substantial evidence.

## ORDER

IT IS ORDERED that plaintiff Virginia Berndt's motion for summary judgment, Dkt. 21, is DENIED and the administrative decision is AFFIRMED. The clerk of court is directed to enter judgment in favor of the defendant and close this case. The hearing scheduled for April 15, 2021, is CANCELED.

Entered April 13, 2021.

BY THE COURT:

/s/
_____
JAMES D. PETERSON
District Judge